RUBY T. WILLIFORD v. MATHA W. JACKSON AND PEARL W. MAR-LEY, CO-ADMINISTRATORS OF THE ESTATE OF MARTHA B. WILLI-FORD, DECEASED

No. 754DC863

(Filed 7 April 1976)

1. **Executors and Administrators § 24— services rendered decedent — re-covery under quantum meruit — sufficiency of evidence for jury**

In an action to recover a sum for services rendered by plaintiff daughter-in-law to her mother-in-law during the last three years of the mother-in-law's life, the trial court properly submitted the issue to the jury where the evidence tended to show that plaintiff and her family lived in the mother-in-law's home, plaintiff cooked, washed, ironed, changed bed linens, and completely cared for the mother-in-law who was unable to do anything for herself without help, and the mother-in-law expressed her appreciation for the daughter-in-law and said that "she wanted her looked after for it."

2. **Trial § 36— expression of opinion by trial court — new trial**

Defendants are entitled to a new trial where the trial court stated an opinion in charging the jury that one witness had cor-roborated the testimony of another witness.

APPEAL by defendants from *Crumpler, Judge*. Judgment entered 27 May 1975 in District Court, SAMPSON County. Heard in the Court of Appeals 17 February 1976.

In her complaint and attached "exhibit," plaintiff, daughter-in-law of the deceased Martha Williford, alleged that in view of services rendered to her mother-in-law during the last three years of the mother-in-law's life she, the plaintiff, is entitled to $3,900 plus interest and costs.

Defendant, administrators of the deceased's estate, denied all material allegations, contended that plaintiff failed to state a claim upon which relief can be granted and moved in their answer for dismissal of the plaintiff's cause of action.

At trial, plaintiff contended, through her own testimony and the testimony of others, that she provided the mother-in-law services including nursing care, preparation of meals, washing clothes and linens and generally extended to the mother-in-law the kind of personal care and attention required for a seriously ill and bedridden person. Plaintiff's evidence further indicated that no remuneration to plaintiff was ever made, but that Martha Williford, cognizant and appreciative of the daughter-in-law's efforts, wanted to have the plaintiff "looked after" because of the work she had done.

Defendant's evidence tended to show that the mother-in-law helped rear plaintiff's children and that personal care for Martha Williford was shared by other family members.

From a verdict and judgment for plaintiff, defendants appealed.

Other facts necessary for decision are cited below.

*McLeod and McLeod, by Max E. McLeod, for plaintiff appellee.*

*John R. Parker for defendant appellants.*

BROCK, Chief Judge.

[1] Defendants argue that their motions for directed verdict should have been allowed. Defendants concede that the relationship of plaintiff and decedent—daughter-in-law and mother-in-law—is not a sufficiently close relationship to raise a presumption that the services claimed to have been rendered were rendered gratuitously. They contend, however, that the evidence disclosed a family relationship with all members of the family living in the home helping each other.

The evidence, viewed in the light most favorable to the plaintiff, tends to show the following: In the early forties, plaintiff and her husband moved into the home with the husband's parents, Jody and Martha B. Williford. Jody Williford died in 1943. From that time until approximately 1954 or 1955, all of Martha's children were living at the homeplace. There were some 10 or 11 people living there, all sharing in the labor and expense, all eating together and living as a family unit. By 1954 or 1955 all of the members of the family except Martha Williford, plaintiff, and plaintiff's husband, had moved away from the home. After the death of Jody Williford, plaintiff's

husband assumed management of the homeplace farm. The farm was rented out and the income used for the support of Martha and plaintiff and her husband and family. When plaintiff's husband worked away from the farm, that income was also used for the support of the family. Plaintiff's husband, in 1961 or 1962, installed a bathroom for the convenience of the family, including Martha Williford, whose condition made it increasingly difficult for her to get to and from the outside bathroom. Plaintiff went to work at the Erwin Mill, but in 1960 or 1961, when Martha Williford's health was such that it became necessary for someone to be there in the home to care for her, plaintiff stopped work and stayed at the home to take care of Martha Williford. Plaintiff did the cooking and washing and ironing. Plaintiff changed the bed linens on Martha's bed. For three years prior to her death, Martha was not able to do anything for herself without help. On 2 July 1971, Martha had a heart attack, and after she was discharged from the hospital, plaintiff's husband carried her to a nursing home on 6 August 1971 where she stayed until 15 December 1971. Thereafter plaintiff's husband brought his mother home and bought a hospital bed for her. She was completely confined to her bed and lost normal control of her bodily functions. Plaintiff cared for her without any help until she again had to be hospitalized on 18 March 1972. She died in the hospital on 13 April 1972. During her period of hospitalization and stay in the nursing home plaintiff and her husband frequently stayed with her in the daytime and plaintiff's husband hired a nurse's aide to stay with her at night. Martha's other children would visit occasionally at the home but did not assist plaintiff in the care of Martha. During her hospitalization and stay at the nursing home, her other children would visit her at night after they got off work and would sometimes contribute to her care, but plaintiff and her husband did most of it. Martha Williford did not receive social security or any other government benefits but "did receive Medicaid or Medicare when she was in the hospital." Plaintiff's husband testified that Martha Williford "hated for Ruby to have to wait on her like she was having to do, and all, and said she wanted her looked after for it."

We are of the opinion that the court properly submitted the issue to the jury.

[2] Defendants also contend that the trial court stated an opinion in charging the jury that one witness had corroborated the testimony of another witness. We agree.

During the course of instructing the jury, the trial court noted that plaintiff's witness, Anne Williford, had " . . . corroborated to a considerable extent the testimony of Mr. William Williford, the husband of the plaintiff in this case."

The issue of corroboration is a matter to be resolved by the jury and the trial court erred in removing this question from the jury's province. In *Lassiter v. R. R.*, 171 N.C. 283, 287-288, 88 S.E. 335 (1916), the Court said:

"We cannot approve an instruction, 'that one witness corroborates another,' as this is a question of fact to be decided by the jury. . . . The tendency of certain testimony to corroborate a witness, and the fact of corroboration, are considered, in law, as two different things. It is for the jury and not for the judge to say how the testimony of a witness is affected by other testimony. *Swan v. Carawan*, 168 N.C., 472. The credibility of witnesses, the weight and sufficiency of testimony, are matters peculiarly within the province of the jury to consider and pass upon.

We are of the opinion that the charge in the respects indicated was not an adequate one, and that the judge inadvertently expressed an opinion upon the weight of the testimony."

Because a new trial must be had, we deem it unnecessary to discuss the other errors assigned by defendants.

New trial.

Judges VAUGHN and CLARK concur.