STATE OF NORTH CAROLINA v. MICHAEL ALLEN LESTER

No. 76

(Filed 24 January 1978)

1. **Criminal Law § 21.1— probable cause hearing—when required**
    G.S. 15A-606(a) requires a probable cause hearing only in those situations in which no indictment has been returned by a grand jury.

2. **Criminal Law § 21.1— preliminary hearing—no constitutional requirement**
    Neither the Constitution of the U.S. nor that of N.C. requires a preliminary hearing as a necessary step in the prosecution of a defendant.

3. **Criminal Law § 21.1— preliminary hearing—failure to hold—no violation of equal protection**
    Defendant's contention that equal protection is violated where a state affords preliminary hearings to some criminal defendants but not others is without merit, since the discretion given to the district attorney in such matters bears a rational relationship to a legitimate governmental objective, i.e., the more efficient administration of criminal justice, and it is therefore not subject to constitutional challenge.

4. **Criminal Law § 104— motion for nonsuit—consideration of evidence**
    Defendant's contention that the trial court erred in denying his motion for nonsuit because the only State's witness to connect him with the crime was inherently increditable is without merit, since the court, in ruling on a motion for nonsuit, does not pass upon the credibility of the witnesses for the prosecution, but instead considers the testimony favorable to the State, takes it as true, and determines its legal sufficiency to sustain the allegations of the indictment.

*State v. Lester*

5. **Homicide § 16— victim's apprehension of death—no specific finding—dying declarations admissible**

In a prosecution for first degree murder where the trial court made no specific finding that the victim knew there was no hope of her recovery, there was nevertheless no error in admitting the victim's dying declarations since the circumstances, including the severity of her wounds, her loss of blood, intense pain, directions to tell her parents she loved them, and repeated expressions of fear of death, indicated that the victim knew that she had no hope of recovery.

6. **Homicide § 16.1— dying declarations—assailants not identified—statements not opinions—evidence of separate offense**

Dying declarations of a homicide victim that she had been raped and stabbed by two white boys with long hair were not inadmissible on the grounds that they failed to identify the victim's assailants, the statements that she had been raped and stabbed were opinion rather than fact, and statements that she had been raped were evidence of a separate offense with which defendant was not charged.

7. **Homicide § 20.1— photographs of victim—admissibility to illustrate testimony**

In a first degree murder prosecution defendant's contention that his stipulation that death was caused by stab wounds should have precluded the admission of three photographs of deceased is without merit, since the photographs were admissible to illustrate testimony describing the manner of the killing, and that testimony was admissible to show premeditation and deliberation.

8. **Criminal Law § 87— immunity granted to witness—sufficiency of notice to defendant**

Defendant's contention that the testimony of a witness should have been excluded because defendant was not afforded full and sufficient notice of the terms of the arrangement between the witness and the State by which it was agreed that the witness would not be prosecuted for his part in the purported crime is without merit, since a letter from the district attorney to defense counsel gave defendant sufficient notice, and defense counsel, when asked by the court if he was surprised by the witness's testimony and desired a recess, requested no recess and took no exception on the basis of failure to grant a sufficient recess. G.S. 15A-1054(c).

9. **Criminal Law §§ 87, 117.3— immunity granted to witness—jury informed of grant**

No prejudicial error arose from the failure of the trial court to instruct the jury concerning the grant of immunity to a witness prior to commencement of his testimony, since the jury was made aware of the grant of immunity during jury selection; the jury was fully instructed by the court as to the arrangement between the State and the witness before completion of his testimony; and the court also instructed on the arrangement during its final charge to the jury.

**10. Criminal Law § 89.5— corroborating testimony—slight variances**

The trial court did not err in allowing the testimony of a corroborating witness, though there were slight variances between his testimony and that of the principal witness, since the testimony substantially corroborated the principal witness as to the crime charged.

ON an indictment proper in form, defendant was charged with and convicted of first degree murder. Appeal was taken pursuant to G.S. 7A-27(a) from judgment of *Kivett, J.*, 8 April 1977 Session, GUILFORD County Superior Court, imposing sentence of life imprisonment to commence at the expiration of other prior sentences.[1]

The State's evidence tended to show the following:

The victim, Pamela Elizabeth Hyatt, age 15, was found on Bunch Road in rural Guilford County near Greensboro on 17 March 1974 at about 10:00 p.m. Shortly after being discovered, Pamela was picked up by area residents and taken to a nearby hospital, where she was treated. During the course of her transportation to and treatment at the hospital, Pamela made several statements to the effect that she had been raped and stabbed by two white boys with long hair. The victim subsequently died about an hour and one-half after reaching the hospital. An autopsy was performed on the body and a vaginal smear taken which revealed the presence of spermatozoa.

The principal State's witness, Robert Winston May, an accomplice, testified that:

He and defendant picked up the victim, who was hitchhiking, and drove around with her while she voluntarily performed various sex acts with them. They finally arrived at a point on Bunch Road where Pamela was later found. At this point, the victim and defendant left the car. As the witness drove off to turn the car around, defendant and the victim walked away from the road. Upon his return, the witness picked up defendant carrying what appeared to be a knife wrapped in a cloth. Defendant was asked what happened and responded that he had stabbed the girl.

An SBI agent, a deputy sheriff, and May's brother gave testimony which tended to corroborate that of the principal

---

1. One of these convictions was previously before us in *State v. Lester*, 289 N.C. 239, 221 S.E. 2d 268 (1976), in which we found no error.

witness. In addition, SBI Agent Hunt testified that the spot May indicated as the one at which he dropped defendant and the victim was the very location where the victim was found.

Defendant offered no evidence.

Additional facts relevant to the decision are related in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Walter E. Clark, Jr., for defendant-appellant.*

COPELAND, Justice.

Defendant brings forward seven assignments of error. For reasons hereinafter discussed, we find each of these assignments to be without merit; therefore, defendant's conviction must be affirmed.

[1] Defendant first contends that the trial court erred in denying his motion for a probable cause hearing in District Court, which was made one month after return of the bill of indictment. It is well-settled in this state that, at common law, a defendant could be tried on a bill of indictment without the necessity of a probable cause hearing. *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed*, 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228 (1975). Defendant argues, however, that under authority of G.S. 15A-606(a), "The judge must schedule a probable-cause hearing unless the defendant waives in writing his right to such hearing." From this, he maintains, arises a requirement that a probable cause hearing be held as a matter of course, regardless of whether an indictment has been returned.

This argument ignores the purpose of such hearings, known prior to enactment of Chapter 15A as preliminary hearings, which is simply to determine whether sufficient probable cause exists to bind the case over to Superior Court and seek an indictment in order to place the defendant on trial. *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied*, 409 U.S. 1047, 34 L.Ed. 2d 499, 93 S.Ct. 537 (1972). Moreover, the discharge of a defendant after a preliminary hearing for lack of probable cause does not bar a later indictment, *State v. Cradle, supra.* Thus, a probable cause

hearing is unnecessary after the grand jury finds an indictment. *State v. Foster*, 282 N.C. 189, 192 S.E. 2d 320 (1972).

While defendant impliedly contends that G.S. 15A-606(a) changes all this, it must be remembered that statutes in derogation of the common law must be strictly construed. *State v. Vaughan*, 268 N.C. 105, 150 S.E. 2d 31 (1966). Indeed, the Official Comment to G.S. 15A-611 indicates that proceedings begun by indictment were once included in subsection (d) of that section as being among those in which no probable cause hearing could be held. An amendment in a legislative committee deleted mention of indictments, however, and sought to restrict the power of district attorneys to bypass probable cause hearings. Subsequently, this latter restriction was itself deleted and, although no mention of indictments was restored to subsection (d), it was the conclusion of the drafters of the Comment that, "In view of the preexisting jurisdictional law and the fairly clear legislative intent . . . it seems certain that no probable-cause hearing may be held in district court once the superior court has gained jurisdiction through the return of a true bill of indictment." We find the logic of this Comment persuasive and therefore hold that G.S. 15A-606(a) requires a probable cause hearing only in those situations in which no indictment has been returned by a grand jury.

[2] Defendant also asserts that refusal of a probable cause hearing in this case resulted in a denial of due process and equal protection under the Fourteenth Amendment. This court has previously held, however, that neither the Constitution of the United States nor that of North Carolina requires a preliminary hearing as a necessary step in the prosecution of a defendant. *State v. Foster, supra.* While the Fourth Amendment requires a timely determination of probable cause for significant pretrial restraint, it is not necessary that such a determination be reached by a procedure including all the trappings of a full adversary hearing. *Gerstein v. Pugh*, 420 U.S. 103, 43 L.Ed. 2d 54, 95 S.Ct. 854 (1975). In the instant case, the finding of probable cause by the grand jury clearly satisfied the requirement of determination by a neutral judicial official, outlined in *Gerstein v. Pugh, supra.*

[3] Defendant's contention that equal protection is violated where, as here, a state affords preliminary hearings to some criminal defendants but not others is likewise without merit. As we have already indicated, a defendant has no fundamental in-

State v. Lester

terest in having an adversary probable cause hearing. There are many situations in which a district attorney may deem it advisable to initiate criminal proceedings by indictment, e.g., where there is no fear of flight by a defendant, or where there exists a need for confidentiality to avoid needless harm to the reputation of a prospective accused. In such instances, a prosecutor may elect to eschew the needless waste of judicial and prosecutorial resources which an unnecessary probable cause hearing would engender. Since the availability of this discretion to a district attorney bears a rational relationship to a legitimate governmental objective, i.e., the more efficient administration of criminal justice, it is not subject to constitutional challenge. *Johnson v. Louisiana*, 406 U.S. 356, 32 L.Ed. 2d 152, 92 S.Ct. 1620 (1972).

[4] Defendant's second assignment of error challenges the denial of his motion for nonsuit. It is his contention that the testimony of May, the only State's witness to connect defendant with the crime, was inherently incredible because he was serving a life sentence for murder; had been convicted of numerous other offenses; had made no statement about the matter for two and one-half years; had at one point repudiated his statement in this case; had been under indictment in other cases, all but one of which were later dismissed; had received immunity for his part in this case and his testimony contradicted other evidence presented by the State.

Defendant argues that under *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), nonsuit must be granted when the only testimony implicating defendant is inherently incredible; however, that case involved evidence which was physically impossible and contrary to the laws of nature. The factors relied on by defendant, while tending to impeach the credibility of the witness, do not expose it as physically impossible. "In ruling on [a motion for nonsuit], the court does not pass upon the credibility of the witnesses for the prosecution, or take into account any evidence contradicting them offered by the defense. The court merely considers the testimony favorable to the State, assumes it to be true, and determines its legal sufficiency to sustain the allegations of the indictment. Whether the testimony is true or false and what it proves if it be true are matters for the jury." *State v. Bowman*, 232 N.C. 374, 376, 61 S.E. 2d 107, 109 (1950). The unsupported testimony of an accomplice, if believed, is suffi-

cient to support a conviction. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964). Further, the granting of immunity to a witness goes only to his credibility and not to his competency. *State v. Johnson*, 220 N.C. 252, 17 S.E. 2d 7 (1941). This assignment is overruled.

[5] Defendant contends in his third assignment of error that the statements by the victim before her death that she had been raped and stabbed by two rednecks or white boys with long hair were not properly admissible as dying declarations. He argues that the circumstances here do not satisfy G.S. 8-51.1, which renders dying declarations of a deceased admissible when they were voluntarily made at a time when the deceased was "conscious of approaching death and believed there was no hope of recovery."

Formerly dying declarations were admissible only in homicide prosecutions and wrongful death actions. 1 Stansbury's N.C. Evidence, (Brandis Rev. 1973), § 146. The overall effect of G.S. 8-51.1 was to liberalize this exception to the hearsay rule by expanding the admissibility of such statements to all civil and criminal trials. This statute results in more restrictive use of dying declarations in homicide and wrongful death cases, however, since the court must find, in addition to an apprehension of death with death in fact ensuing, that the deceased believed there was no hope of recovery. Nevertheless, "It is not necessary for the declarant to state that he perceives he is going to die. If all the circumstances, including the nature of the wound, indicate that the declarant realized death was near, this requirement of the law is satisfied." *State v. Bowden*, 290 N.C. 702, 712, 228 S.E. 2d 414, 421 (1976).

In the instant case, while the trial court found that the victim was in actual danger of death at the time the statements were made and fully apprehended such danger, there was no specific finding that she believed there was no hope of recovery. Still, we conclude from the surrounding circumstances and the nature of the victim's wounds that she was aware that she had no hope of recovery. She had been stabbed once in the chest, with a laceration of the heart and a stab wound to the lung, and once in the abdomen, penetrating the intestine and right kidney. She was in a great deal of pain and asked the people who took her to the hospital to tell her parents that she loved them. The victim lost a

great deal of blood on the way to the hospital and by the time she arrived was unable to sit up or walk. Witnesses testified that during the trip to the hospital the victim said she had been raped and stabbed by two rednecks. Upon her arrival at the hospital, tests revealed that the victim had no blood pressure. She told nurses attending to her that she had been raped and stabbed by two white boys with long hair. She repeatedly asked if she was going to die, saying that she was too young to die.

Considering the severity of her wounds, her loss of blood, intense pain, directions to tell her parents she loved them, and repeated expressions of fear of death, we conclude that the victim knew she had no realistic hope of recovery; therefore, the admission of her declarations was not error.

[6] Defendant further maintains that these statements were inadmissible because (1) the declarations did not identify her assailants, (2) statements that she had been "raped and stabbed" were opinion rather than fact and (3) statements that she had been "raped" were evidence of a separate offense with which defendant was not charged.

Defendant's contention that the declarations must identify the deceased's assailants is based on one asserted rationale for admission of dying declarations, the prevention of secret homicides. In view of the statutory extension of admissibility of dying declarations to all civil and criminal actions, however, "Admissibility seems no longer to be confined to situations in which the declarant's death is in issue, but rather extends to any situation in which the cause or circumstances of the declarant's death may be relevant to any issue in litigation. The rationale of the statute clearly rests upon a belief in the general trustworthiness of dying declarations, rather than upon the necessity for bringing to justice the perpetrators of secret homicides." 1 Stansbury's N.C. Evidence, (Brandis Rev. 1973), § 146, p. 151 (1976 Supp.). Additionally, under the old rationale the statements would be admissible since any evidence tending to describe or identify a victim's assailants would further the purpose of capture and conviction of those guilty of secret homicides.

Regarding defendant's exception to these declarations as opinion rather than fact, "It is usually said that the declaration must be a statement of fact and not opinion, but this seems to

mean only that the declarant must have had personal knowledge of the declared facts, and not that the opinion rule in all its severity is applicable. The declaration will not be excluded because it . . . is expressed in a verbal 'shorthand' which would not be permitted of a witness on the stand." *Id.*, § 146, p. 491. These statements, under the exigencies of the situation, could hardly have been expressed more concisely or factually.

Defendant's argument that portions of the victim's statements were evidence of a separate offense and therefore inadmissible is also without merit. The two crimes here were parts of the same transaction and so closely connected in time and circumstance that one could not be fully shown without tending to prove the other; consequently, the victim's declarations that she had been "raped" as well as stabbed were fully competent and admissible. *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410, *death sentence reversed*, 403 U.S. 948, 29 L.Ed. 2d 861, 91 S.Ct. 2292 (1971); *State v. Morrow*, 262 N.C. 592, 138 S.E. 2d 245 (1964).

[7] By his fourth assignment of error, defendant asserts that his stipulation that death was caused by stab wounds should have precluded the admission of three photographs of the deceased and that the only purpose for the use of the photographs was to inflame the jury. Nonetheless, "This argument misses the point that in a first degree murder case premeditation and deliberation may be proved circumstantially by showing the use of grossly excessive force, or by proof of the brutal manner of the killing. A mere stipulation as to the cause of death may not necessarily convey to the jury full information as to the actual manner of killing. In such a case it is legitimate and often necessary to use testimony describing in detail the manner of killing, and photographs, properly authenticated, may be offered to illustrate this testimony." *State v. Patterson*, 288 N.C. 553, 570-571, 220 S.E. 2d 600, 613 (1975) (citations omitted), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1211, 96 S.Ct. 3211 (1976). *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963), and other cases present an exception, in cases of excessive use, to the general rule of admissibility of even gory and gruesome photographs. We find, however, no such excessive use of photographs in the record before us and therefore overrule this assignment of error.

[8] The fifth assignment of error raised by defendant challenges the admission of the testimony of Robert Winston May on

grounds that defendant allegedly had not been afforded full and sufficient notice of the terms of the arrangement between the witness and the State by which it was agreed that the witness would not be prosecuted for his part in the purported crime. G.S. 15A-1054(c) requires written notice fully disclosing to a defendant the terms of any arrangement between a witness and the State in which the State agrees not to prosecute the witness or seeks sentence reductions for the witness in exchange for his truthful testimony in a criminal proceeding. Such notice is to be provided the defendant a reasonable time prior to any proceeding in which the witness is expected to testify.

The trial court found that defendant had been advised, both orally and in writing, that the witness, in exchange for his truthful testimony, would not be prosecuted in connection with any of the facts or circumstances arising out of the alleged murder or rape of the victim. Upon our reading of the record, we conclude that the letter from the district attorney to defense counsel substantially complies with the requirements of the statute; thus, the trial court's finding is supported by competent evidence and must be affirmed. Moreover, the remedy for failure to comply with the statute is the granting of a recess upon motion by the defendant, rather than suppression of the testimony. *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976). In the case *sub judice*, the trial court directly inquired of defense counsel whether he was surprised by this testimony and desired a recess. None was requested, nor was any exception taken on the basis of failure to grant a sufficient recess; thus, we find no merit in this contention and it is overruled.

[9] Defendant next assigns as error the failure of the trial court to instruct the jury concerning the grant of immunity to the witness Robert Winston May prior to the commencement of his testimony. The record discloses, however, that the jury had been made aware of the grant of immunity during the jury selection. Further, the jury was fully instructed by the court as to the arrangement between the State and the witness before the completion of his testimony. The court also instructed on the arrangement during its final charge to the jury. We conclude from these circumstances that no prejudicial error arose from the failure of the trial court to instruct on the immunity grant prior to the

testimony of the witness, *cf., State v. Cousins, supra*; consequently this assignment is overruled.

[10]   In his seventh and final assignment of error, defendant contends that the testimony of the brother of the State's principal witness was inadmissible because it failed to corroborate that of Robert Winston May. The corroborating witness testified that the principal witness told him that defendant and he raped the victim and defendant stabbed her. Defendant maintains that this testimony should have been excluded because it did not in fact corroborate that of Robert Winston May, since he had testified that the victim willingly submitted to defendant's and his sexual advances.

Slight variances in corroborating testimony do not render such testimony inadmissible, since it is for the jury to determine whether the testimony of one witness in fact corroborates that of another. *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. denied*, 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717 (1961). Upon objection by defendant, the trial court properly instructed the jury concerning corroborating testimony. The statement objected to substantially corroborated the principal witness as to the crime of murder. While portions of the corroborative testimony may have been arguably incompetent, defendant objected to the testimony as a whole without specifying the offensive portions. Objections to testimony *en masse* ordinarily will not be sustained if any portion is competent, it being the duty of the objecting party to point out the objectionable matter. *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). This assignment, too, is without merit and overruled.

We have carefully reviewed all defendant's assignments of error and in the verdict and judgment find

No error.