STATE OF NORTH CAROLINA v. WILBERT JUNIOR ROGERS

No. 39

(Filed 1 April 1980)

1. **Criminal Law § 89.5— corroborative evidence—element not included in prior testimony**

Where a witness testified that defendant pulled deceased from defendant's car and "went to the bridge with him," that he heard another person say, "Don't throw that boy in that cold-ass water," and that he then heard a splash, an officer's testimony that the first witness told him defendant took the deceased from defendant's car "over to the side of the bridge and [threw] him over" and that he then heard a splash was admissible to corroborate the first witness's earlier testimony, although the officer's testimony went beyond the testimony of the first witness in stating that the witness told the officer that he actually saw defendant throw deceased over the side of the bridge, since the testimony of the first witness and of the officer constituted substantially the same account of the activities which occurred on the bridge, the clear implication of the first witness's testimony was that defendant threw deceased over the side of the bridge, and the fact that the officer's testimony included an additional element in its narrative of the events on the bridge did not render it incompetent as corroborative evidence.

2. **Homicide § 27.1— instructions—second degree murder and manslaughter— heat of passion—error cured by further instructions**

Any error in the court's confusing instruction on finding defendant guilty of voluntary manslaughter rather than second degree murder if the State failed to prove that defendant did not act in the heat of passion upon adequate provocation was cured by correct instructions thereafter given to the jury when the jury requested additional instructions on second degree murder and manslaughter.

Justice EXUM concurring.

Justices COPELAND and BROCK join in the concurring opinion.

ON discretionary review to review the decision of the Court of Appeals reported at 43 N.C. App. 177, 258 S.E. 2d 418 (1979), affirming the judgment entered by *McLelland, J.,* at the 21 August 1978 Criminal Session of ALAMANCE Superior Court.

Upon a plea of not guilty, defendant was tried upon a bill of indictment proper in form which charged him with the first-degree murder of Talmage Ray Yancey (Ray Yancey). At the beginning of the trial, the state announced that it would not seek a conviction of any degree of homicide greater than second-degree murder. Evidence by the state is summarized in pertinent part as follows:

On the evening of 24 December 1977, defendant, Clester Massey, Joe-Joe Yancey, Charles Snipes, and Ray Yancey had gathered in a club in Burlington, North Carolina, and were drinking. After a short time, the group left and proceeded to a tavern in Burlington known as Floyd's Place where they continued to drink beer. They travelled in a blue station wagon driven by defendant. While they were at the second club, defendant agreed to drive the group for a price to a discotheque in Burlington known as the Zodiac.

As the group rode to the Zodiac in defendant's car, they began fighting when defendant was accused of charging too much for the ride. Defendant stopped the car, and the fighting continued both inside and outside of the automobile. In the course of the fighting, defendant was beating upon Ray Yancey. The brawl ended as a police car approached the scene. Several persons left the automobile, and defendant then took on more passengers.

After driving a short distance, defendant ordered Charles Snipes to get out of the car. Snipes thereupon requested that he be allowed to remove his friend, Ray Yancey, from the automobile. Defendant refused the request, and he struck Snipes twice in the face with his fist as he sought to get out of the vehicle. Defendant left Snipes on the side of the road as he drove off.

One of the individuals that defendant picked up after the fight was Robert Moore. Moore remained a passenger in defendant's car after Snipes had been forced to exit. Moore and Charlie Phillips, who had also been picked up after the fight, rode with defendant and Ray Yancey to Stoney Creek Bridge on North Carolina Highway 62, north of Burlington. Moore testified for the state that defendant stopped the car on the bridge; that defendant pulled Ray Yancey, who was then asleep, from the automobile and towards the edge of the bridge; that he then heard someone say, "[M]an, don't throw that boy in that cold-ass water," and that he then heard the water splash. Defendant then got back into the vehicle and drove off.

Ray Yancey was reported missing to the Alamance County Sheriff's Department on 26 December 1977 by his aunt. On 2 January 1978, the detective division received an anonymous phone call that Yancey had been thrown in the Haw River at Glencoe Bridge. A search of the area proved unsuccessful. On 5

January 1978, the division received another phone call telling them that the body would be found at Stoney Creek Bridge. This call was from Ruben Totten, an officer at the Alamance County Sheriff's Department. Totten had obtained the information from talking with Robert Moore and Willie Moore. Relying on this information, elements of the Alamance County Rescue Squad and the sheriff's department went to the bridge. After a search of approximately one and a half hours, Yancey's body was found and brought ashore.

The body was then taken to the office of the Chief Medical Examiner of the State of North Carolina in Chapel Hill where an autopsy was performed. At trial, Dr. Bradley B. Randall, a forensic pathologist who had been on the staff of the Chief Medical Examiner on 6 January 1978 when the autopsy was performed, testified that the cause of Yancey's death was fresh water drowning and that the influence of alcohol coupled with a low water temperature would have made it difficult for decedent to have removed himself from the water.

Defendant offered no evidence.

The jury found defendant guilty of second-degree murder. Judge McLelland thereupon entered judgment upon the verdict and sentenced defendant to prison for a term of from seven to twelve years.

Defendant appealed. The Court of Appeals found no error. Defendant gave notice of appeal and petitioned for discretionary review pursuant to G.S. 7A-31. On 4 December 1979, we granted the Attorney General's motion to dismiss the appeal, but we allowed the petition for discretionary review for the limited purposes of: (1) reviewing the admission of certain testimony at trial which was purportedly corroborative in nature, and (2) considering the propriety of the trial court's instructions concerning voluntary manslaughter.

*Attorney General Rufus L. Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*H. Clay Hemric, Jr., for defendant-appellant.*

BRITT, Justice.

[1]  Defendant contends that the trial court committed prejudicial error in admitting the testimony of Lieutenant Daniel Qualls, a detective with the Alamance County Sheriff's Department. The essence of defendant's contention is that the officer was able to testify in a narrative fashion as to his interpretation of the events which occurred on the evening of 24 December 1977. By so doing, he was then able to fill in portions of the narrative which were crucial to the state's case but which had not been testified to by any of the state's witnesses. Defendant therefore concludes that the testimony of the detective was not corroborative in nature but was, in fact, incompetent hearsay whose admission entitles him to a new trial. We disagree.

During the presentation of the state's case-in-chief, Robert Moore testified on direct examination that

> [Defendant] went around the car from the front of it and opened the door and pulled this guy out. There were no lights except the headlights. . . . Well, he—he—he pulled him out and went to the bridge with him. I heard Charlie [Phillips] say, 'Man,' say, 'don't throw that boy in that cold-ass water,' and about this time I heard the water splash. . . . I heard the water splash and just continued sitting in the car. I didn't hear anybody say anything except Charlie. As to what happened outside the car, it was sort of a blur like and dark outside the car. I saw him when he pulled the Yancey boy out of the car onto the bridge with him.

Later on in the state's case-in-chief, Detective Qualls testified regarding a conversation he had with Robert Moore on 12 January 1978. On direct examination, the officer testified that Moore told him that

> . . . the defendant, Wilbert Rogers, gets out, goes around in front of the vehicle, opens the passenger's door on the car, takes the defendant—correction, takes the victim, Talmadge Yancey, out, takes him over to the side of the bridge and throws him over. He heard the man hit the water, hears the splash. From the time he heard the—heard the splash, he didn't hear any more struggling, no more splashing in the water.

Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. *See State v. Case,* 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. denied,* 365 U.S. 830 (1961); *Lassiter v. Seaboard Air Line Ry.,* 171 N.C. 283, 88 S.E. 335 (1916). Where testimony which is offered to corroborate the testimony of another witness does so substantially, it is not rendered incompetent by the fact that there is some variation. *State v. Lester,* 294 N.C. 220, 240 S.E. 2d 391 (1978); *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated,* 408 U.S. 939 (1972). It is the responsibility of the jury to decide if the proffered testimony does, in fact, corroborate the testimony of another witness. *State v. Lester, supra; State v. Case, supra.*

A careful comparison of the testimony of the detective with that offered by the witness Moore indicates that the two are substantially the same account of the activities which occurred on the Stoney Creek Bridge on the evening of 24 December 1977. This same analysis clearly shows that the testimony of Detective Qualls goes beyond that of Moore in one important respect: At no time did Moore testify that he actually saw defendant throw Talmadge Yancey over the side of the bridge. However, the clear implication of Moore's testimony is that defendant did precisely that act. That Moore did not mention one act which was clearly a component of a series of interrelated acts does not in any way serve to abridge the probative force of the rest of his testimony.

That the testimony of the detective differed from that of Moore in that it embodied an additional element in its narrative of the events of 24 December 1977 does not render it incompetent as corroborative evidence. We do not mean to suggest that we are calling into question the continued viability of the rule of *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354 (1963). *Brooks* stands for the proposition that the state may not introduce new evidence through testimony which purportedly corroborates the testimony of a prior witness. On the facts of this case, *Brooks* does not come into play in that the proffered testimony meets the threshold test of substantial similarity. It must be observed also that in the present case, there was no objection to this portion of the officer's testimony, nor was there a motion to strike. Had there been such a request, the court would have been obligated to instruct the jury that the officer's testimony was not substantive

evidence but was to be considered by them with reference to the weight and credit they would give to Moore's testimony if the jury found that it did corroborate his testimony. *See State v. Westbrook, supra.* There was no error.

At a later point in his direct examination, Detective Qualls testified with respect to a trip to the Stoney Creek Bridge with Moore in early March 1978. Over objection, the officer testified about what Moore told him on the trip as to where defendant had stopped the car on the bridge on the evening of 24 December 1977 and Moore's pointing out where the car stopped. We perceive no error in the admission of this evidence as it too was competent to corroborate Moore's testimony. *State v. Westbrook, supra; see generally* 1 Stansbury's North Carolina Evidence §§ 50, 52 (Brandis Rev. 1973).

[2] Defendant assigns as error the following portion of Judge McLelland's charge to the jury:

> If the State does not prove beyond a reasonable doubt that the defendant did not act in the heat of passion upon adequate provocation and that his action was so soon after the provocation that the passion of a person of average mind and disposition would not have cooled, then you may not find the defendant guilty of second-degree murder, but he would at most be guilty of voluntary manslaughter.

Defendant argues that the quoted instruction was erroneous and prejudicial to him. The state argues that even if the instruction was erroneous, it was favorable to defendant because it placed a greater burden on the state than is required. The state further argues that any error in the instruction was cured by later instructions given by the court.

Reasonable minds can disagree as to the true meaning of the instruction complained of. We can appreciate the difficulty the trial judge encountered in charging juries in compliance with the decision in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), which mandated our decision in *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd. on other grounds* 432 U.S. 233, 53 L.Ed. 2d 306 (1977). Nevertheless, we must say that the challenged instruction is confusing and difficult, if not impossible, to understand.

Assuming, *arguendo*, that the instruction is erroneous, we hold that it was not prejudicial to defendant in view of the later instructions given by the trial judge.

Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). Voluntary manslaughter is the unlawful killing of a human being, without malice, express or implied, and without premeditation and deliberation. *State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971).

After the jury had retired to commence its deliberations, they returned to the courtroom and, through their foreman, requested additional instructions on the crimes of second-degree murder and voluntary manslaughter. In his supplemental instructions, Judge McLelland stated that:

> Mr. Foreman and members of the jury, as indicated in the instructions yesterday, second degree murder is defined in law as the intentional, unlawful killing of a human being with malice. The State, to prove second degree murder, must prove that the act which proximately caused the death was intentional. It is not required to prove that the defendant had a specific intent to kill, but specifically intended to do the act which proximately caused the death. The killing of a human being is unlawful unless excused by some circumstances, and I instruct you that there are no circumstances in evidence which would excuse the killing.

> The State, to prove second degree murder, must prove by evidence beyond a reasonable doubt that two things, first, that the defendant intentionally and without malice pushed Ray Yancey over a bridge. Malice is hatred, ill will, or spite and is also that condition of mind which prompts a person to take the life of another person by an intentional act which proximately results in the death of that other person without just cause or excuse or wantonly to act in such a manner as to manifest depravity of mind, a heart devoid of a sense of social duty and a callous disregard for human life. And secondly, the State must prove beyond a reasonable doubt that the act of pushing Ray Yancey off the bridge was a prox-

imate cause of Yancey's death. Proximate cause is real cause, cause without which Yancey would not have died.

*****

Voluntary manslaughter is the unlawful, intentional killing of a human being without malice. Unlawful is, as I have defined if (sic) before, a killing not justified by any excuse the law recognizes; and I instruct you again there is no evidence of any excuse in this case that the law recognizes as justifying the killing. The intentional aspect again is not a specific intent to kill, but an intent to throw him off the bridge. The State must prove beyond a reasonable doubt that that act was intentional. The State need not prove that he acted with malice. If, however, the State has proved that he acted with malice, then you must consider whether or not the evidence shows, not beyond a reasonable doubt but simply shows, that he acted in the heat of passion, or heat of blood, upon adequate provocation. . . .

If he acted in the heat of passion, or heat of blood, upon adequate provocation though you find there was malice, not considering the action in the heat of passion, then he would be guilty at most of voluntary manslaughter, not second degree murder, for one who acts in the heat of passion acts without malice; and though you find other evidence of malice, if you find, if you believe, the State's duty being to prove beyond a reasonable doubt that he did not act in the heat of passion, if you believe he acted in the heat of passion, then he can be guilty of no higher offense than manslaughter, voluntary manslaughter.

*****

So I instruct you as to voluntary manslaughter, as I instructed you yesterday, that if you find from the evidence beyond a reasonable doubt that on or about December 24-25, 1977, the defendant intentionally pushed Ray Yancey over the bridge, but the State has failed to satisfy you that in doing so he acted with malice either in that the State's evidence does not prove beyond a reasonable doubt that he had malice toward Yancey or the State has not proved beyond a reasonable doubt that he did not act in the heat of

passion upon adequate provocation; and if the State has further proved beyond a reasonable doubt that the defendant's act was a proximate cause of his death, your duty would be to return a verdict that he is guilty of voluntary manslaughter.

These further instructions stated accurately the applicable rules of law as we have summarized them above. That the jury requested additional instructions indicates that they might have been confused by the earlier instructions.

The charge of the court must be construed contextually, and isolated portions will not be held prejudicial error when the charge as a whole is free from objection. *E.g., State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683, *cert. denied,* 409 U.S. 948 (1972). The supplemental instructions of Judge McLelland, when coupled with the principal instructions he first gave, correctly informed the jury as to the applicable law and in no way prejudiced defendant's rights to a fair trial.

The decision of the Court of Appeals is

Affirmed.

Justice EXUM concurring.

Although I concur in the result reached by the majority in the case today, I cannot agree that certain portions of the testimony of Detective Daniel Qualls concerning the 12 January conversation Qualls had with the state's witness Robert Moore were competent to "corroborate" Moore's earlier testimony. Moore's testimony about the fatal incident at Stoney Creek Bridge reveals at most that defendant pulled the deceased from defendant's car and "went to the bridge with him"; that Charlie Phillips then said, "Don't throw that boy in that cold-. . . water"; and that Moore then heard a splash. Detective Qualls' testimony, on the other hand, clearly indicates that Moore told Qualls that the defendant took the deceased "over to the side of the bridge *and [threw] him over. He [Moore] heard the man hit the water . . . .*" Far from merely corroborating, strengthening, confirming, or making more certain Moore's direct testimony as to the incidents observed at the bridge, Qualls' testimony goes further to add the crucial element that Moore had told Qualls of actually

*seeing* the defendant commit the very crime for which he is charged. In this respect, Qualls' testimony was inadmissible hearsay which should have been stricken had a proper and timely objection been offered.

In *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963), this Court recognized that the state may not, under the guise of "corroboration," introduce "new" evidence — i.e., evidence which substantially and materially goes beyond that which it is intended to corroborate. If, however, presumably "corroborative" testimony is generally consistent with the evidence which it purports to buttress, slight variations between the two will not render the testimony inadmissible. "Such variations affect only the credibility of the evidence which is always before the jury." *Id.* at 189, 132 S.E. 2d at 357. The majority's analysis purports to adhere to the continued viability of the rule in *Brooks* by characterizing Qualls' "corroborative" testimony as bearing no more than slight variations from the substance of Moore's statements on the stand. I disagree. A witness' statement that a defendant was in a position, or even in actual preparation, to commit a crime is far different from a statement that the witness *saw* the defendant do the criminal act. The latter does not *corroborate* the former; rather it adds to it an element of central importance to the prosecution's case. Although it may be true in the instant case that "the clear implication of Moore's testimony is that defendant did precisely that act" for which he is charged, such an implication nevertheless was one for the jury to accept or reject on the basis of competent evidence adduced at trial. It should not be embellished by subsequent hearsay testimony improperly admitted under the guise of "corroboration." Corroboration is a matter of supporting the substance of prior evidence, not its inferences or implications.

The cases cited by the majority on this point merely serve to sketch the contours of permissible variation between evidence and its subsequent corroboration. In *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. denied*, 365 U.S. 830 (1961), the prosecuting witness testified that her assailants tied her to a tree and told her she had fifteen seconds to escape before they would come back and take her life. A second witness testified in corroboration that the prosecutrix had told him that she was given sixteen seconds to escape. This Court found no error in the admission of

the corroborating testimony. In *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated,* 408 U.S. 939 (1972), defendant was on trial for the murder of Carla Jean Underwood. The state's chief witness, defendant's accomplice, testified that defendant shot Miss Underwood and that he and defendant then left the scene of the crime and drove to a residence at which a Mr. and Mrs. Bozart were visiting. A police officer's subsequent testimony as to statements made by the witness to him corroborated the witness' testimony in all respects except that the officer testified that the witness had stated that the purpose of going to the house where the Bozarts were had been to rob a safe in the house. Noting that the officer's testimony "substantially" corroborated the witness' statements from the stand, this Court found no error in its admission. Similarly, in *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978), a first degree murder case based upon a theory of premeditation and deliberation, defendant's accomplice testified that the victim had voluntarily submitted to his and defendant's sexual advances before defendant stabbed her. The witness' brother then testified in corroboration that the witness had told him that the victim had been raped by the witness and defendant. This Court found no prejudice in the admission of the brother's testimony: "The statement objected to substantially corroborated the principal witness *as to the crime of murder*." 294 N.C. at 230, 240 S.E. 2d at 399. (Emphasis supplied.)

In both *Lester* and *Westbrook*, then, the variation between the substantive evidence and its subsequent corroboration was deemed slight where the bits of "new" evidence added by the corroborative testimony had no bearing on any of the elements of the crimes charged. In the instant case, however, the "new" evidence brought in by Detective Qualls' corroborative testimony was that Moore had stated that he had seen the defendant push the victim off the bridge — a fact not testified to by Moore and one which goes to the very heart of the state's case in chief. The additional element embodied in Qualls' testimony thus cannot be casually dismissed as constituting only a "slight variation" from the witness' narrative it is intended to corroborate.

On point is *State v. Fowler*, 270 N.C. 468, 155 S.E. 2d 83 (1967), a first degree murder case wherein State's witness testified that defendant forcibly took a gun from a police officer, forced the officer into a jail cell, and then shot him. Another

witness testified in corroboration that the first witness had stated that defendant, before firing the gun, had said he "was sorry but he had to do this." This Court granted a new trial on the basis that the second witness' hearsay testimony was not corroborative and described an occasion of a fixed and premeditated purpose to kill. *See also State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976), for another instance where prejudice was found in the admission of purportedly corroborative testimony which actually added evidence material to the state's case.

That the quoted portion of Detective Qualls' testimony was improperly admitted, however, does not require a finding of reversible error under the facts of this case. In the first place, defendant made no objection, either general or specific, to the testimony. It is well settled in this state that a general objection will not suffice to challenge the offering of corroborative evidence which is arguably incompetent in some respects. "Rather, it is the duty of the objecting party to call to the attention of the trial court the objectionable part" with a specific objection. *State v. Britt*, 291 N.C. 528, 536, 231 S.E. 2d 644, 650 (1977); *accord, State v. Lester, supra*, 294 N.C. 220, 240 S.E. 2d 391. *A fortiori*, defendant cannot preserve an exception where no objection at all was taken. His counsel will not be heard to complain of error discovered for the first time on appeal. Secondly, there was plenary competent evidence offered at trial from which the jury could have determined defendant's guilt of the crime charged. In the absence of any indication that a different result would have occurred had Detective Qualls' testimony not been admitted, there was no prejudice to defendant such as to warrant a new trial. G.S. 15A-1443. I thus concur with the majority's result in this case.

Justices COPELAND and BROCK join in this concurring opinion.