STATE OF NORTH CAROLINA v. FRANK L. BEAM, JR.

No. 8327SC1103

(Filed 4 September 1984)

1. **Criminal Law § 21.1— absence of preliminary hearing—no constitutional or statutory violation**

Neither the Constitution of the United States nor the Constitution of North Carolina requires a probable cause hearing as a necessary step in the prosecution of a defendant, and G.S. 15A-606(a) requires a probable cause hearing only in those situations in which no indictment has been returned by a grand jury.

State v. Beam

**2. Indictment and Warrant § 4— indictment based on hearsay evidence**

An indictment will not be quashed on the ground that testimony before the grand jury given by a qualified witness may have been hearsay and incompetent. Further, a defendant is not entitled to examine members of the grand jury and witnesses appearing before the grand jury to support his contention that the finding of a true bill was based solely on incompetent evidence.

**3. Constitutional Law § 30— statements of witnesses not discoverable**

A defendant in a criminal case is not entitled to the pretrial discovery of copies of statements of the State's witnesses.

**4. Constitutional Law § 30— denial of motion for discovery of exculpatory evidence**

The trial court properly denied defendant's pretrial motion for discovery of exculpatory evidence allegedly possessed by the State where defendant contended that the State withheld evidence by certain individuals who did not testify at the trial, and sworn statements of both individuals filed in support of a motion for appropriate relief could not be considered exculpatory.

**5. Criminal Law § 73.2— statement not within hearsay rule**

Testimony by deceased's mother that a doctor had told her that her son had an enlarged heart was admissible since it was not offered to prove that the deceased had heart problems but was offered to prove that defendant had knowledge of the facts declared in the statement.

**6. Criminal Law § 162.4— unresponsive portion of answer—necessity for motion to strike**

Failure to move to strike the unresponsive part of an answer, even though the answer is objected to, results in a waiver of the objection.

**7. Criminal Law § 34.8— other crimes—competency to show common plan and motive**

In a prosecution for the murder of a rest home patient who died of heart failure after defendant, the rest home owner, allegedly assaulted him, testimony concerning assaults by defendant on other rest home patients who disobeyed defendant's orders or violated rules of the rest home was competent to show a common scheme and pattern of defendant and to show defendant's motive for assaulting deceased for having disobeyed an order of defendant.

Judge BECTON concurs in the result.

APPEAL by defendant from *Grist, Judge*. Judgment entered 3 May 1983 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 2 May 1984.

Defendant was tried on an indictment, proper in form, charging him with murder in the second degree of Emmett Kenneth Hawkins. Upon a jury verdict finding defendant guilty of involun-

tary manslaughter the trial judge imposed the presumptive term of three years. From the verdict and judgment imposed, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General J. Michael Carpenter, for the State.*

*Horn, West, Horn and Griffin, P.A., by C. A. Horn, for defendant appellant.*

JOHNSON, Judge.

The State's evidence tended to show the following: Emmett Kenneth Hawkins was born 27 August 1956. On 7 March 1975, he was admitted as a patient to the Western Carolina Center for the mentally retarded in Morganton, North Carolina. Upon his admission Emmett underwent a physical examination and a series of tests conducted by Dr. Agnes Milan. As a result of the physical examination and various tests conducted, Dr. Milan diagnosed Emmett as having a heart murmur and an enlarged heart. Dr. Milan advised Emmett's mother, Jane Katherine Hawkins, of Emmett's heart diseases.

On 28 December 1976, Emmett became a patient at the F. L. Beam Rest Home of Fallston, North Carolina. The rest home was owned and operated by defendant, who at times assigned various patients to do chores around the rest home. On several occasions defendant assaulted patients who disobeyed him or violated the policies of the rest home. On 15 August 1981, after Emmett had returned from a trip into the town of Fallston, defendant charged into Emmett's room and yelled, "What in the hell have you been doing? I told you to go out this morning and help dig a grave." When Emmett responded, "I'm not digging no (sic) more graves. My mother said I was a boarder here and I wasn't supposed to work," defendant commenced beating Emmett by slapping him and striking him in the chest. Emmett died as a result of heart failure caused by the stress defendant's assault placed upon his diseased heart. Prior to this assault upon Emmett, defendant had been advised of Emmett's heart diseases.

Defendant offered evidence which tended to show the following. Dr. Richard Maybin, a general practitioner of medicine, testified that he has examined patients of F. L. Beam Rest Home.

Emmett was a patient of his from 1977 through February 1981, and the only diagnosis Dr. Maybin made of Emmett is that he suffered from mental retardation. Dr. Maybin further testified that he was never aware that Emmett suffered from any heart disease. Defendant testified that in addition to owning and operating the F. L. Beam Rest Home, he was also in the grave digging business, but that he never assigned Emmett to dig a grave and that he never struck Emmett or knew that Emmett suffered from any heart disease. Defendant further testified that Donna Avery is the only rest home patient he ever struck.

Additional facts shall be set forth in the opinion as necessary for the discussion of the issues.

At the outset, we note that defendant's assignments of error IV, VIII, XI, XII, XIII, XIV, XVI, XVIII, XIX, XX and XXI are abandoned in that appellant fails to discuss or cite authority in his brief concerning these assignments of error. Rule 28(b)(5) of the Rules of Appellate Procedure.

[1] By his first assignment of error defendant contends that failure to provide him with a probable cause hearing constituted a denial of his constitutional right to due process and violated the provisions of G.S. 15A-606(a). G.S. 15A-606(a) provides in pertinent part that "The judge must schedule a probable cause hearing unless the defendant waives in writing his right to such hearing."

The identical issues raised by defendant's first assignment were addressed in *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978). The *Lester* Court held (1) that neither the Constitution of the United States nor the Constitution of North Carolina requires a probable cause hearing as a necessary step in the prosecution of a defendant and (2) that G.S. 15A-606(a) requires a probable cause hearing *only* in those situations in which no indictment has been returned by a grand jury. *Id.* at 223-224, 240 S.E. 2d at 396 (emphasis added). In the case *sub judice*, the grand jury returned an indictment against defendant, thereby negating the requirement of a probable cause hearing under G.S. 15A-606(a). Accordingly, this assignment of error is without merit.

Defendant contends the trial court erred in the denial of his motion to quash the bill of indictment and the court's granting of

the State's motion to quash subpoenas issued by defendant for the grand jury foreman and a witness who appeared before the grand jury. We disagree.

Defendant argues that the indictment was invalid because the sole witness who appeared before and was examined by the grand jury was Wayne Pegram, an SBI agent, and that all Agent Pegram knew about the case was hearsay. Defendant does not contend that Agent Pegram was not a competent witness to appear before the grand jury, but simply that his testimony was hearsay, a fact defendant proposed to establish through the grand jury foreman and Agent Pegram for whom defendant issued subpoenas.

[2] It is well established that an indictment will not be quashed on the ground that testimony before the grand jury given by a qualified witness may have been hearsay and incompetent. *State v. Cade,* 268 N.C. 438, 150 S.E. 2d 756 (1966); *State v. Hartsell,* 272 N.C. 710, 158 S.E. 2d 785 (1968). Further, a defendant is not entitled to examine members of the grand jury and witnesses appearing before the grand jury to support his contention that the finding of a true bill was based solely on incompetent evidence. *State v. Walker,* 251 N.C. 465, 477-478, 112 S.E. 2d 61, 70, *cert. denied,* 364 U.S. 832, 81 S.Ct. 45, 5 L.Ed. 2d 58 (1959). This assignment is overruled.

Defendant contends the trial court erred in the denial of defendant's pretrial motions to require the State to produce statements of witnesses for the State and to disclose exculpatory statements.

On 17 January 1983, defendant filed a pretrial motion for discovery pursuant to G.S. 15A-903 in which he sought among other things "(1) Any and all statements made by any witness to any agent of the State of North Carolina during its investigation. . . ." On 7 April 1983, defendant filed a second pretrial motion for discovery of:

"all information and evidence in the possession of the State or prosecution that may be materially favorable to the accused. . . ., to wit:

(a) Copies of any and all statements allegedly made by the defendant, whether oral, written, taped, recorded or in

whatever form that the prosecution intends to introduce into evidence or to rely upon in the trial of said case.

(b) The names and addresses of all persons interviewed and a copy of the statement allegedly made by such person and whether such statement is oral, written, taped, recorded or otherwise reduced to writing by summary or otherwise.

(c) The total and complete list of all persons interviewed in the entire investigation and the name of the person or persons conducting such interview, together with a copy and correct account of the interview. If more than one interview has been made as to any person, then a copy and result of each interview should be produced.

(d) Any and all tape or electronic recordings, written statements or summaries made thereof by any office or employee with reference to all persons interviewed, whether they are to be called as witnesses for the state or not, and any other attorney with whom the state may have privy of investigative reports or interviews in any form fully stated within this motion whether they are to be called as witnesses for the state or not.

(e) A complete and detailed list of the criminal record of all state's witnesses, including any and all charges which may now be pending against them and which has not yet been officially disposed of by plea, trial or otherwise.

(f) Any and all written reports, documents, or any physical evidence that is in the possession of the state or the prosecution relative to this case or the investigation thereof.

(g) The total and complete investigative files of the State Bureau of Investigation, Department of Human Resources, and other agency or bureau of the state who may have taken part in any phase of said investigation; together with all correspondence and communications concerning the same.

(h) The names and addresses of all agents of the State Bureau of Investigation, Department of Human Resources, Cleveland County Department of Social Services, sheriff's office or district attorney's office who may have participated in said investigation.

(i) Whether or not any person interviewed in reference to said case or the investigation thereof has in any way or manner directly or indirectly been subjected to any coercion, duress, threats, intimidation, punishment, unequal treatment or discrimination and whether any of such persons have been promised immunity from prosecution, leniency or any form of reward, inducement or offer of help of assistance has been held out, offered or made to him.

7. There may be other items and matters of evidence, information, and data in existence that are not enumerated aforesaid and of which movant is unaware, due to the secrecy surrounding the investigation and the lack of a preliminary hearing but in any event movant now requests and demands that he be afforded with any and all evidence and information, whether specifically delineated and listed herein or not, that may be materially favorable to the movant . . . ."

In response to defendant's motions, the State filed a motion for a protective order pursuant to G.S. 15A-908 requesting that defendant's motions be denied on the grounds that (1) the State was not required to furnish defendant with statements of the State's witnesses; (2) defendant's pretrial motion of 7 April 1983 amounts to no more than a general request for all favorable material evidence and (3) the State was not in possession of any evidence which was both material and exculpatory or favorable to defendant. On 18 April 1983, after considering the above motions and after hearing arguments of counsel for the defendant and State, the court denied defendant's motions.

[3] It is well settled that a defendant in a criminal case is not entitled to the pretrial discovery of a copy of statements of the State's witnesses. *State v. Moore*, 301 N.C. 262, 268, 271 S.E. 2d 242, 246 (1980); *State v. Abernathy*, 295 N.C. 147, 156, 244 S.E. 2d 373, 380 (1978). Accordingly, defendant's pretrial motion of 17 January 1983 was properly denied.

[4] In support of his 7 April motion defendant relies upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). The *Brady* Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87, 10 L.Ed. 2d at 218, 83 S.Ct. at 1196-97.

In *State v. Hardy*, 293 N.C. 105, 127, 235 S.E. 2d 828, 841 (1977), the Court held that for the *Brady* standard to apply, the defendant is required to make *a specific request at trial* for disclosure of the evidence (emphasis added). The Court further stated that once defendant has made a specific request at trial, the trial court is required to order an in camera inspection and make appropriate findings of fact. If the judge, after the in camera examination, rules against the defendant on his motion, the judge should order the sealed statement placed in the record for appellate review. *Id.* at 128, 235 S.E. 2d at 842. A request for "all favorable and material evidence" does not alert the prosecution to the materials requested. Consequently, such a request amounts to "no request." *Id.* at 127, 235 S.E. 2d at 842.

Defendant's motion of 7 April 1983, is no more than a general request for a fishing expedition to have the State give defendant all that the State has learned about the case, about its witnesses and to make a complete and detailed accounting to the defense of all state agencies' investigatory work on the case. As a result, the trial court did not conduct an in camera examination and did not include any alleged exculpatory evidence in the record. Ordinarily, this would preclude this Court from being able to conduct any review of any alleged exculpatory evidence which defendant asserts that the State possessed. However, defendant presents the alleged exculpatory evidence to this Court in a motion for appropriate relief he filed with this Court 16 April 1984, pursuant to G.S. 15A-1418. In his motion for appropriate relief, defendant states that he conducted post-trial interviews with Mary Evelyn Green, Martha Morris and William White, none of whom were witnesses at the trial of the case. Defendant attached sworn statements of these individuals which defendant contends constitute the exculpatory evidence withheld by the State and which would have had a direct and material bearing upon the outcome of the case.

We fail to see how any of these statements could constitute exculpatory evidence or could have influenced the jury to have arrived at a different verdict. A summary of Green's post-trial statement is that she was interviewed by a SBI agent before defendant's trial and that she told the agent that the defendant slapped her on the jaw twice. A summary of White's statement is that on 15 August 1981, he was in the TV room and that he heard

nothing. Further, that he never heard anyone say that defendant beat Emmett. A summary of Morris' statement is that on 15 August 1981, defendant struck Emmett in the chest and that Emmett, thereafter, complained of chest pain and fell to the floor. This evidence fails to support defendant's contention that the State was in possession of any exculpatory evidence relating to this case. Accordingly, the trial court properly denied defendant's motion of 7 April. Also, defendant's motion for appropriate relief is hereby denied.

[5] Defendant next contends that the court erred in allowing Jane Hawkins to testify that she told defendant that a doctor at the Western Carolina Center told her that her son had an enlarged heart. This testimony was not offered to prove that the deceased had heart problems, but was offered solely to prove that defendant had knowledge of the facts declared in the statement. Accordingly, the testimony was admissible. *See State v. Dailey*, 33 N.C. App. 551, 235 S.E. 2d 876 (1976), *cert. denied*, 293 N.C. 254, 237 S.E. 2d 258 (1977).

In a related assignment, defendant contends the court erred in allowing the mother of the deceased, Jane Katherine Hawkins, to testify that the doctors felt that her son, the deceased, was born with a heart murmur and that she told the defendant what the doctors said about her son's heart condition. We disagree.

[6] In response to a question concerning difficulties she experienced with her pregnancy and birth of her son, Jane Hawkins stated: "I had a rough pregnancy with him. He was born three weeks premature and when he was born, *they felt that he started out having heart murmur*." (Emphasis added.) Defendant's objection to the answer was overruled. Defendant now complains that the emphasized portion of the answer is hearsay and therefore inadmissible. Although defendant objected, he made no motion to strike. Failure to move to strike the unresponsive part of an answer, even though the answer is objected to, results in a waiver of the objection. *State v. Chatman*, 308 N.C. 169, 178, 301 S.E. 2d 71, 77 (1983). These assignments are overruled.

[7] Defendant contends the court erred in allowing evidence, through eyewitness thereto, of previous assaults committed by the defendant upon other patients of the F. L. Beam Rest Home. At trial, the State contended that it was defendant's custom and

practice to beat those patients who disobeyed his orders or breached the rules of the rest home as a means of "disciplining" them; that prior to 15 August 1981, defendant had assaulted other patients at the rest home and that on 15 August 1981, defendant, in keeping with his practice, beat the deceased because the deceased had apparently failed to help dig a grave as he had been so ordered by the defendant. The State's evidence tended to show that on 15 August 1981, defendant, after charging into the deceased's room and yelling, "What in the hell have you been doing? I told you to go out this morning and dig a grave," commenced beating the deceased when the deceased told him that he was not going to dig any more graves.

Over defendant's objection the court allowed the following witnesses to testify to assaults they had observed defendant commit on other rest home patients: Homer Chatham testified that he observed defendant beat Ricky Webb, Ruth Ewings and Betty Parlier, and that defendant told him that he beat those patients who failed to listen to him in order to make them obey and to show them that he was the "boss." Dorothy Baynard testified that she observed defendant beat Mary Evelyn Green about the face with his hand and fist. Mary Lee Finner testified that she observed defendant beat Donna Avery, Catherine Hanna and William White. Hazel Mae Hunter testified that she observed defendant beat Ricky Webb, Donna Avery and a patient named Paul. Christina Jones testified that she observed defendant beat Donna Avery. None of these alleged assault victims were witnesses at the trial.

This evidence clearly shows a common scheme and pattern of the defendant to beat patients in order to make them obey him and to show them that he was in charge. It also shows defendant's motive for assaulting the deceased for having disobeyed defendant's orders to help dig a grave. Accordingly, this evidence was properly admitted. *See State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

We have carefully examined defendant's remaining assignments of error regarding the court's evidentiary rulings and find them to be without merit.

Defendant has received a trial free of prejudicial error.

No error.

Judge WELLS concurs.

Judge BECTON concurs in the result.